CULPEPPER, Judge.
The plaintiff filed this suit for the balance of $2,800 due on the price of a dwelling which he sold to defendants. The price was $28,000, but at the time the sale was completed 10% was deposited in escrow with an attorney, pending correction by plaintiff of certain listed defects in the premises. Plaintiff alleges he has corrected all the defects and is entitled to the sum held in escrow by the attorney.
The defendants answered and filed a re-conventional demand, alleging redhibitory defects. They pray for rescisión of the sale or, in the alternative, reduction of the purchase price. The district judge awarded plaintiff the $2,800 sued for. He rejected entirely defendants’ reconventional demand. Defendant appealed.
The substantial issues concern the alleged redhibitory defects. The district judge gave written reasons in which he considered each alleged defect separately as follows:
“The defendants contend that there were numerous defects and enumerates them in Article 18 and the Court will treat them separately.
“ A. Sagging roof due to absence of rafter braces; ’
This matter was brought to the attention of the plaintiff builder and it was corrected. The defendants admit that this correction has been made. They contend that there is still a sag in the roof. The only proof of this is by a builder, who stated that it appeared to him that there was about a one inch sag in the roof. He admitted that he did not make any scientific determination which led him to believe that there was a one inch sag in the roof. Even if it existed the proof is that this is not a defect.
“ ‘B. Open sewerage line; ’
There was no proof that there was an open sewerage line. Even if there had *812 been this would have been an apparent defect easily discoverable upon simple inspection.
“ ‘C. Kitchen counter top ruined by improper installation of range; ’
There was no proof that this was an improper installation. Apparently the defendants are not satisfied with the workmanship of the installation. They knew of its appearance at or before the consummation of the sale and can not now complain of it.
“ ‘D. Improperly laid brick and excessive mortar droppings at hearth, fireplace and chimney; ’
Again this is a matter that was easily discoverable upon simple inspection and was in fact discovered prior to the consummation of the sale.
“ ‘E. Chimney ash clean-out improperly installed damper will not close, no rain cap on chimney; ’
There is no proof that the chimney ash clean-out was improperly installed. The damper would not close because of some excess mortar. The experts that testified stated that this occurs in every chimney construction and it is a simple thing to tap off the excess mortar which any layman can do. The absence of rain cap on the chimney is not a defect as many chimneys do not have this. Also all of these things would be discoverable upon simple inspection.
“ ‘F. Excessive mortar on all brick walls, patio, porch and floors; ’
Some of the experts said that there was excess mortar, others said that there was not. Whether there is excess mortar or not is a matter discoverable upon simple inspection.
“ ‘F. Toilet in master bath flushes with hot water; ’
This is a defect, that was known by the defendants but they refused to permit the plaintiff to repair it and therefore can not now complain about it.
“ ‘H. Washer drain overflows because not properly vented; ’
There is not sufficient proof that the washer drain overflows. There was testimony by the sister of the defendant-wife that she saw water on the floor. There is no proof that this water was caused by improper plumbing or by some mechanical failure of the washing machine or improper use of the plumbing.
“ T. Weather stripping and lock strike at front entrance improperly installed ; ’
This is the matter of which the defendants were aware and the plaintiff states that it has been corrected.
“ ‘J. Air conditioner air grill installed upside down; ’
There was no testimony regarding this matter.
“ ‘K. Lot torn up by builder during construction period, lot improperly sloped, water stands on lot and runs toward house contrary to health regulations and good building practices; ’
This is the matter that certainly was obvious to anyone who could walk up to the building and see that the lot was muddy and retained water in spots. There was no proof that water drained to the house after ordinary rains. Of course after some tremendous exceptional rains one could expect water. This is especially true for the year 1973.
“ ‘L. Driveway improperly graded; ’
The driveway is certainly visible to the naked eye and the defendants certainly observed it before they purchased the house and knew what they were purchasing. Even after the sale, the plaintiff hauled in some more pit gravel which was the type of material on the driveway at the time of the sale and the inspection *813 by the defendants. The defendants apparently want a couple of inches of wash gravel placed over their driveway but there was no agreement by the parties for this.
“ ‘M. Water well improperly installed, treated and tested. Water unfit for human consumption; ’
There was some bacteria in the water, chlorine was added and it was corrected.
“ ‘N. Other defects, too numerous to here mention, to be proved at trial.’
There was no proof adduced at the trial of other defects which would bring about redhibition or reduction of the purchase price.”
Although there is some conflict in the testimony, there is a reasonable evidentiary basis for the finding of fact of the trial judge as to those defects, which he expressly discussed above, Canter v. Kehring Company, La., 283 So.2d 716 (1973).
However, we are impressed by defendant’s argument on appeal as to a latent defect which the trial judge did not expressly discuss, i. e., the chimney for the fireplace. The chimney is about six feet wide and two feet deep from ground level all the way to the top. The inside of this large chimney is open. There was no flue. Mr. Lucien McGee, the bricklayer who constructed the chimney, testified that as he reached the top he placed a piece of y%" plywood, with a hole in the center, across the brick, so as to provide a small opening to make the chimney draw. On top of this piece of plywood he placed three more courses of brick, and then a few bricks in the center around the hole in the plywood. Mr. McGee testified that he had built chimneys like this before and they had proved satisfactory.
However, defendant’s expert, Mr. Wood-ruff, a man of much experience in residential construction, testified that this piece of plywood near the top of the chimney was very likely to catch on fire and burn, and then the brick on top of it would simply fall down into the fireplace. He said it was unsafe. It was his opinion that the .entire chimney would have to be reconstructed with either a ceramic flue or a brick flue.
Mr. Luther Nations, another expert brickmason, testified for the defendants that the piece of plywood probably would catch on fire, and that it was not safe. Although he finally conceded that the defect could probably be corrected by simply removing the piece of plywood and replacing it with a piece of non-flammable material.
We are impressed with defendant’s argument that plain common sense would indicate that wood should not be used to construct any part of the inside of a chimney, even if it is used near the top. Defendants are afraid it is unsafe. They have never built a fire in the fireplace.
It is our conclusion that defendant is entitled to a reduction of $300.00 in the purchase price to correct this defect in the chimney.
For reasons assigned, the judgment appealed is amended so as to reduce the award to plaintiff from the sum of $2,800.-00 to the sum of $2,500.00. Otherwise, the judgment is affirmed. The costs of this appeal are assessed one-half to plaintiff and one-half to defendant.
Affirmed, as amended.